UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No: 8:19-cr-396-MSS-AAS-10

DANIEL VÁSQUEZ
Full Name: DANIEL JOSÉ VÁSQUEZ VÁSQUEZ     ///

## DEFENDANT'S SENTENCING MEMORANDUM, MOTION FOR SAFETY VALVE AND MOTION FOR MINOR ROLE REDUCTION

**COMES NOW THE DEFENDANT, Daniel Vásquez**, by and through his undersigned counsel, pursuant to 18 U.S.C. s.3553, and makes these his sentencing memorandum, motion for safety valve and motion for minor role reduction, and respectfully says:

**USSG CALCULATION**

On August 27, 2019, a fishing boat with 14 men onboard, the Defendant and 13 Codefendants, was boarded by the USCG whom seized about 305 kilograms of cocaine that was onboard. **The BOL is 36** (USSG s.2D1.1: 150 kg-449.999 kg), and the Defendant is moving for 3 levels reduction for a **timely change of plea**, accepting responsibility; timely (2 + 1 respectively); a **minor role** reduction with its corresponding adjustment of the offense level (2 + 3 respectively); and **safety valve** qualification with its waiver of the 10 year min/man and 2 level reduction: **resulting in a 10 level reduction from the BOL of 36**, or

**FINAL OFFENSE LEVEL of 26, cr.hx.cat.I: _recommended_ USSG sentence of (63 months, (5 yr 3 mo)-78 months (6.5 yr)).** The Defendant is also respectfully requesting further downward variances to said recommended score of 63-78 months.

**Sufficient but not greater than necessary, 18 USC s.3553(a)**

Of course the Courts ought to impose sentences that "are not greater than necessary" to comply with the need for the sentence imposed (18 USC s.3553(a) and (a)(2)).

The Courts when determining the particular sentence to be impose ought to consider the 7 factors and/or policy statements outlined in 18 USC s.3553(a)(1)-(7):

**(a) Factors To Be Considered in Imposing a Sentence.—** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
**(2)** the need for the sentence imposed—
**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
**(B)** to afford adequate deterrence to criminal conduct;
**(C)** to protect the public from further crimes of the defendant; and
**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
**(3)** the kinds of sentences available;
**(4)** the kinds of sentence and the sentencing range established for—
**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
**(i)** issued by the Sentencing Commission pursuant to section 994 (a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28); and
**(ii)** that, except as provided in section 3742 (g), are in effect on the date the defendant is sentenced; or
**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994 (a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28);
**(5)** any pertinent policy statement—
**(A)** issued by the Sentencing Commission pursuant to section 994 (a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28); and
**(B)** that, except as provided in section 3742 (g), is in effect on the date the defendant is sentenced. [1]

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

## REASONS AND MOTIONS TO VARY DOWNWARD

### I. Personal Mitigation Factors, 18 USC 3553

*This 32 year old Defendant (9/1/87) (psr page 4) can only read and write his name; otherwise he is completely illiterate (he cannot read the names of the fishing boats printed on the sides of them); he has a 5th grade education because he dropped out of the 6th grade to start working to support his family p49.* He has been a lifelong poor fisherman, with an 8 year old daughter and 5 step children of his significant other's prior relationship (2 of the 5 step children live with the Defendant) (psr paragraph "p" 41) whom he misses terribly, and for whom he was trying to buy clothes and supplies for school by agreeing to go on this boat trip related to drug smuggling for $200 upfront, and a promised "bonus" after the trip. The Defendant's significant other, Roserbi Del Carmen Vásquez Vásquez, is really adversely affected by the Defendant's arrest and incarceration because the Defendant is the main provider for Ms. Vásquez Vásquez, their 8 year old daughter, 2 of the other 5 children whom live with them, and himself p41; her father is helping Ms. Vásquez Vásquez and the 6 children survive economically while the Defendant is incarcerated p41. Defendant was living in Ms. Vaásquez Vásquez's parents house, with her parents living there too, along with the Defendant, his 8 year old daughter, and 2 of his 5 step children p41.

The Defendant was born on Margarita Island, Venezuela (psr paragraph "p" 39) to his fisherman father and his homemaker mother p39, and he has 6 siblings p40. His 5 brothers are also fisherman like Defendant and their father and his sister works in agriculture p40. He

grew up in poverty and had insufficient necessities growing up, including having to wear second hand clothing and shoes p39.

When the undersigned met the Defendant at the jail after having initially met with the Defendant at first appearance, the Defendant was uncontrollably sobbing, suffering the separation from his 8 year old daughter, and feeling panicked that he could not support his wife, her 2 other children whom live with them, their 8 year old daughter, given he was in custody and the economic crisis currently in Venezuela. Whenever the undersigned met with the Defendant thereafter, he would at some point begin sobbing for the same reasons. At the change of plea hearing, the Defendant had difficulty keeping from sobbing, the Court having to pause the colloquy at point(s) to allow the Defendant to finish sobbing. During these sobbing episodes he is begging forgiveness and saying he was sorry for what he had done, and for the difficult position his criminal actions have put his family in economically. He is constantly saying how much he misses, not only his whole family and step children, but specifically how he has caused his 8 year old daughter to not have her father's economic and emotional support in her life, he misses her so much that he is in desperate pain of the separation that his criminal actions have caused.

## II. Personal Cost to Defendant and his family; Cost to Society of Lengthy Incarceration (sufficient but not greater than necessary)

**The p.64 states it costs $37,448.00 per year to incarcerate offenders, as opposed to $4,472.00 to supervise offenders in the community**

Defendants ought to be sentenced to enough incarceration to satisfy "sufficient[ly]" the goals of punishment in sentencing factors and commission policy, while avoiding any "greater than necessary" expense and punishing sentence. A sentence which exceeds one that is sufficient,

will be "unreasonable" and "unfair". *U.S. v. Fernandez*, 436 F.Supp. 2d 983 (E.D. Wis.

2006) (According to the <u>*Federal Defender*</u>, infra, the Court in *U.S. v. Fernandez*, 436 F.Supp.

2d 983 (E.D. Wis. 2006) imposed a 126 months sentence because the career offender

guideline range of 188-235 months, was greater than necessary to satisfy sentencing

purposes, in part due to Sentencing Commission study on unfairness of career offender

designation, <u>*Federal Defender*</u><u>, at p.17-847</u>. <u>*Defending a Federal Criminal Case, 2010*</u>

<u>*Edition, Vol.II,*</u><u> Federal Defenders of San Diego, Inc. ("*Federal Defender*"))</u>.

**<u>The Personal and Economic Cost of Incarceration: a reason to Adjust Downward</u>**

The <u>*Federal Defender*</u> lists the following cases with the following tenets:

"*United States v. Chavez*, 230 F.3d 1089 (8th Cir. 2000) (Bright, J., concurring) (sentence will
probably cost taxpayers $836,000, and the defendant his life.  Guidelines range for
nonviolent offenders drains billions from taxpayers and keeps potentially productive
members of society locked up, causing staggering "opportunity costs").

*United States v. Angelos*, 345 F. Supp. 2d 1227 (D. Utah 20040 (cost of mandatory 61-year-
sentence runs to $1,265,000, money that could otherwise be spent on other law enforcement
or social programs to reduce crime).

*United States v. Hughes*, 825 F. Supp. 866 (D. Minn. 1993) (court noting that "the non-
rehabilitation purposes of incarceration – retribution, deterrence and incapacitation – would
all be more than adequately served by a far shorter sentence.  Both society and the defendant
will pay a dear cost for this sentence and receive very little in return.").  <u>*Federal Defender*</u><u> at</u>
<u>pp. 17-866-867</u>.

**III. <u>Prison has greater significance/impact for this first time offender</u>**

S.3553(a)(2)(A) states in part, a sentence is meant "*to provide just punishment for the*

*offense*" while s.3553(a)(2)(B) states one reason upon which to fashion a sentence, is **"***to*

*afford adequate deterrence to criminal conduct*".  The Defendant is 32 years old without any

prior record, supra.

The <u>*Federal Defender*</u> at <u>s.17.05.15</u> states:

*United States v. Baker*, 445 F.3d 987 (7th Cir. 2006) (affirming variance of 78 months from 108 months for defendant convicted of distributing child pornography, justified in part by judge's finding that prison would mean more to this defendant than one who has been imprisoned before, which resonated with goal of "just punishment" in s. 3553(a)(2)(A) and "adequate deterrence" in Section 3553(a)(2)(B)).

*United States v. Paul*, 239 F. Appx 353 (9th Cir. 2007) (defendant's 16-month sentence, the top end of the guideline range for unlawful receipt of federal funding, was unreasonably high because defendant was a first-time offender, returned the funds, and displayed remorse).

*United States v. Weidner*, 209 F. Appx 826 (10th Cir. 2006) (affirming variance from advisory range of 78-97 months to 60 month sentence for two counts of false bank entry considering defendant's loss of law license due to conviction and judgment that this sentence provided adequate deterrence).

*United States v. Jewell*, 2009 WL 1010877 (E.D. Ark. April 15, 2009) (defendant sentenced to 30 months in prison for aiding and abetting tax evasion, because guideline range near the statutory maximum of 5 years was inappropriate for first time offender).
*United States v. Cull*, 446 F. Supp. 2d 961 (E.D. Wis. 2006) (non-guideline sentence of 2 months in jail and 4 months home confinement, where advisory range was 10-14 months for marijuana offense by defendant who had never been confined, was sufficient to impress on him the seriousness of his crime and deter him from reoffending).

*United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) (generally, a lesser prison term is sufficient to deter one who has not been subject to prior lengthy incarceration).

## IV.  Minor Role Reduction

**MOTION FOR MINOR ROLE REDUCTION (2 + 3 Levels respectively, infra)**

The Defendant was paid a mere $200 to agree to go on this smuggling venture on the fishing boat; $200 is on average what he would make normally for a legitimate fishing venture; they promised him "a bonus" or "something good extra" for when they returned from the venture.  The drugs were neither on the fishing boat when the Defendant and his 13 Codefendants boarded, nor when they departed.  A boat came to their fishing boat later on, and the Defendant and others were told to receive the packages from the visiting boat and place them on the fishing vessel.  One of the visiting men whom were delivering the drugs,

ended up staying with this fishing vessel and is a Codefendant in this case. In sum, the Defendant was clearly being used for a cheap $200 fee, to participate as a mere mariner to do what he was told, on this drug smuggling venture controlled by people standing to profit immensely from the shipment of 305 kg of cocaine. One kilogram of cocaine is 2.2 pounds. In 2015 the USCG reported to CNN that each kilogram "brick" seized in the high seas is worth roughly $25,000, https://www.cbsnews.com/news/what-800-million-worth-of-cocaine-looks-like/

*This means that in this case, using the value the USCG-reported in 2015, the Defendant was paid $200, and promised "something good extra on the return" for being 1 of 14 passengers whom would have delivered to their boat for transportation (along with the 14th of 14 Codefendants) $7,625,000 worth of cocaine. That 1 kg of pure cocaine that sells in the U.S. for $25,000, costs only $2,000 to produce in Colombia, please see CNN article supra:*

"The Coast Guard estimates it is only catching a third of what's out there. Commandant Paul Zunkuft says the reason more cocaine is economics.

"When you look at the business case of what it takes to produce one kilo of cocaine, about $2,000 in Colombia, that same kilo sells for $25,000 here in the U.S."

The USSG s.3B1.2 provides for a 4-level minimal role, 2-level minor role, or a 3-level intermediate role reduction. Specifically, s.3B1.2(b) provides for a 2-level reduction if "the Defendant was a minor participant in any criminal activity." The determination whether a Defendant should receive a role reduction is a fact-based determination and is "heavily dependent on the facts of the particular case." *Please see* USSG s.3B1.2 App. N. 3(C). The Application notes provide guidance on distinguishing between a "minimal" and a "minor"

participant. Specifically the application notes provide that a minimal participant is:

> [A person] who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge and understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant. It is intended that this downward adjustment for minimal participant will be used infrequently.

USSG s.3B1.2, App. N.4.

In contrast to a minimal participant, the Application Notes provide that a minor participant "applies to a Defendant . . . who is less culpable than most other participants, but whose role could not be described as minimal." Additionally, in contrast to the Commission's observation that a "minimal participant" reduction should be used infrequently by a sentencing court, there is no such prohibitive language within the description of a "minor" participant. In fact, as part of the November 1, 2015 amendments to the guidelines, the Sentencing Commission expressed the opinion that sentencing courts are not granting mitigating role reductions for low-level offenders as much as the Commission had intended. *Please see* USSG Appendix C, amend. 794.

In drug cases such as the present case, a role reduction is directly tied to the base offense level determination under USSG s.2D1.1. **Specifically, s.2D1.1(a)(5) provides that "if the Defendant receives an adjustment under §3B1.2 (Mitigating Role); and** (B) the base offense level . . . is (i) 32, decrease by 2 levels; **(ii) level 34 or level 36, decrease by 3 levels**; or (iii) level 38, decrease by 4 levels." **Additionally, the Application Notes to s.3B1.2 provide that in drug cases where a Defendant's base offense level is determined pursuant to s.2D1.1(a)(5), the Court shall additionally reduce that base offense level**

**based on the Defendant's mitigating role, whether that be a 4-level minimal participant, a 2-level minor participant, or a 3-level intermediate participant reduction.** *Please see* USSG s.3B1.2 App. N.6.

Over the past 14 years, the Sentencing Commission, out of concern that sentencing courts around the country have been under-applying or misapplying the mitigating role reduction, has attempted to provide sentencing courts added guidance on when it is appropriate to apply the s.3B1.2 mitigating role and corresponding s.2D1.1(a)(5) base offense reductions. Specifically, on November 1, 2002, Congress and the Sentencing Commission drastically amended USSG s.2D1.1 to reduce the sentences for low-level drug conspiracy participants by providing that the offense level specified in the Drug Quantity Table should be applied "except that if the Defendant receives an adjustment under s.3B1.2 (Mitigating Role), the base offense level under [2D1.1] shall not be more than level 30." USSG s.2D1.1(a)(3), USSG Appx. C, Amend. 640. As such, if a drug offender qualifies for either a minimal, minor, or intermediate role reduction, then the highest possible base offense level that the Defendant may receive is a level 30. *Id.* The legislative history of this amendment provides that:

> This amendment responds to concerns that the guidelines pertaining to drug offenses do not satisfactorily reflect the culpability of certain offenders . . .
>
> [ ] The amendment modifies s.2D1.1(a)(3) to provide a maximum base offense level of 30 if the defendant receives an adjustment under s.3B1.2 (Mitigating Role). *The maximum base offense level somewhat limits the sentencing impact of drug quantity for offenders who perform relatively low level trafficking functions, have little authority in the drug trafficking organization, and have a lower degree of individual culpability (e.g., "mules" or "couriers") whose most serious trafficking function is transporting drugs and who qualify for a mitigating role adjustment).*

This part of the amendment responds to concerns that base offense levels derived from the Drug Quantity Table in s.2D1.1 overstates the culpability of certain drug offenders who meet the criteria for a mitigating role adjustment under §3B1.2.  The Commission determined that, ordinarily, a maximum base offense level of 30 adequately reflects the culpability of a defendant who qualifies for a mitigating role adjustment.

USSG Appx. C, Amend 640 (*emphasis added*).

As noted by the Sentencing Commission as part of the November 1, 2015, amendment to the mitigating role provision, after conducting a recent in-depth national study, the Sentencing Commission found that sentencing courts were still not applying the mitigating role reduction as often as was intended by the Commission.   Specifically, the Sentencing Commission noted:

The Commission conducted a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony.  Overall, the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended.  In drug cases, the Commission's study confirmed that mitigating role is applied inconsistently to drug Defendants who perform similar low-level functions (and the rate of application varies widely from district to district).  For example, application of mitigating role varies along the southwest boarder, with a low of 14.3 percent of couriers and mules receiving the mitigating role adjustment in one district compared to a high of 97.2 percent in another.  Moreover, among drug Defendants who do receive mitigating role, there are differences from district to district in application rates of 2-, 3-, and 4-level adjustments.

*Please see* USSG App. C, Amend. 794.

Based on this study's findings, the Commission's clarifying November 1, 2015, amendment to s.3B1.2 was created in hopes of fostering a greater application of the mitigating role reduction for Defendants who perform relatively low-level functions, such as "mules" and "couriers," for large drug trafficking organizations. *Id.*   It is the intent of the Commission by way of the Amendment to address the Commission's observation "that

courts often [incorrectly in the eyes of the Commission] deny mitigating role to otherwise eligible Defendants if the Defendant was considered 'integral' to the successful commission of the offense." *Id*.

In response to the "inconsistent" and "sparse" application of the mitigating role adjustment, the amendment to the guidelines was designed specifically to "provide additional guidance to sentencing courts in determining whether a mitigating role adjustment applies." *Id*. Specifically, the amendment "addresses a circuit split and other case law that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances." *Id*. To assist courts and to encourage them to apply the adjustment more frequently, the Commission has provided sentencing courts with "a non-exhaustive list of factors for the court to consider in determining whether an adjustment applies and, if so the amount of the adjustment." *Id*. **Specifically, the Commission's November 1, 2015, factors direct a sentencing court to consider:**

    **(i)**     **the degree to which the Defendant understood the scope and structure of the criminal activity;**

    **(ii)**     **the degree to which the Defendant participated in planning or organizing the criminal activity;**

    **(iii)**     **the degree to which the Defendant exercised decision-making authority or influenced the exercise of decision-making authority;**

    **(iv)**     **the nature and the extent of the Defendant's participation in the commission of the criminal activity, including acts the Defendant performed and the responsibility and discretion the Defendant had in performing those acts; and**

    **(v)**     **the degree to which the Defendant stood to benefit from the criminal activity.**

**USSG s.3B1.2, App. N. 3(C).**

Additionally, and of great significance to the present case, the amendment further provides that:

> For example, a Defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

> The fact that a Defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a Defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

*Id.*

As noted in the Commission's clarifying November 2015, amendment:

> A Defendant who is accountable under s.1B1.3 (Relevant Conduct) only for the conduct in which the Defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under the guidelines. *For example, a Defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs* and who is accountable under s.1B1.3 only for the quantity of drugs the Defendant personally transported or stores, may receive an adjustment under the guidelines."

**USSG s.3B1.2, App. 3(A)** (emphasis added).

Therefore, based upon the newly-created factors this Court is guided by the Sentencing Commission to specifically consider in determining when to apply a mitigating role reduction pursuant to USSG s.3B1.2. In applying the appropriate factors, the Defendant respectfully submits he ought to merit a minor role reduction.

### The abrogation of the reasoning in *Rodriguez de Varon* and similar cases by the mitigating role amendment to the Guidelines

Contrary to the anticipated position of the United States Probation Office in responding to minor role objections, the Eleventh Circuit opinion in *United States v. De*

*Varon*, 175 F.3d 930 (11th Cir. 1999), should no longer be used by this Court to preclude an offender as the Defendant in this case from eligibility for a mitigating role reduction. In fact, it is clear from the legislative history of the November 1, 2015, amendment to the mitigating role provision that the Sentencing Commission has abrogated the reasoning in *Rodriguez De Varon*. *Please see* generally USSG Appendix C, Amend. 794. As previously noted after conducting an in-depth national study, the Sentencing Commission enacted the November 1, 2015, version of USSG s.3B1.2 (Mitigating Role). This change in the guidelines was in response to the Sentencing Commission's findings that sentencing courts were not applying the mitigating role reduction as often as was intended by the Commission. Specifically, the Sentencing Commission noted:

> **The Commission conducted a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony. Overall, the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended.**

*Id.*

Based on this study's findings, the Commission's clarifying amendment to s.3B1.2 was created in hopes of fostering a greater application of the mitigating role reduction for Defendants, such as this Defendant, whom perform relatively low-level functions, such as "mules" and "couriers," for large drug trafficking organizations. *Id.* As noted in the legislative history of the amendment, it was the specific intent of the Commission by way of the Amendment to address the Commission's observation "that courts often deny mitigating role to otherwise eligible Defendants if the Defendant was considered 'integral' to the successful commission of the offense." *Id.* The Eleventh Circuit opinion in *United States v. Rodriguez De Varon*, 175 F.3d 930 (11th Cir. 1999), although not specifically named by the

Sentencing Commission, is one such case that has justified the denial of a mitigating role reduction where the evidence supports a finding that the Defendant was "integral" or played an "important" or "essential" role in the transportation of the drugs he or she transported. *Rodriguez De Varon*, at 943 ("Therefore, when a drug courier's relevant conduct is limited to her own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs" justifying a denial of a mitigating role reduction).[1]

*The rationale in the Rodriguez De Varon opinion, which has now been viewed unfavorably by the Sentencing Commission, has been used exclusively in this District to deny minor role reductions for transporters of large quantities of cocaine while on board a vessel subject to the jurisdiction of the United States.* Despite the clear intent of the Sentencing Commission, the Government and the Probation Department are continuing to rely upon this now-flawed opinion from the Eleventh Circuit to justify a denial of a role reduction in the present case, *Please see* p24. For this Court to continue to follow the flawed reasoning in the *Rodriguez De Varon* opinion would be contrary to the intent of the Sentencing Commission and Congress and would defeat the clear intent of the Sentencing Commission to increase the rate of mitigating role reductions for otherwise-qualified Defendants.

*In the eyes of the Sentencing Commission, the Rodriguez De Varon opinion has been*

---

[1]"Couriers, like *De Varon*, who are convicted solely of the crime of importing drugs and whose base offense levels reflect only those drugs they personally brought into this country, are not eligible for a role reduction of any kind. It will always be clear error for a district court to grant a courier a role reduction in such circumstances. *See United States v. Lampkins*, 47 F.3d 175, 181 (7th Cir. 1995)('It makes no sense to claim that one is a minor participant in one's own conduct'); *United States v. Burnett*, 66 F. 3d 137. 140 (7th Cir. 1995)('Where a courier is held accountable for only the amounts he carries, he plays a significant rather than a minor role in that offense'). This conclusion necessarily follows from the guidelines, from principles recognized in the Court's opinion in this case, and from common sense." 174 F.3d at 947 (Carnes, Concurring).

*inappropriately focusing on whether the courier or transporter of drugs was important or essential to the importation offense in determining whether to apply a mitigating role reduction. It is the Commission's clear intent that a sentencing court not focus on whether the task performed was "integral" or "essential," but, instead, to focus on the task the Defendant performed in relationship to the larger conspiracy in which they were involved. This fact is clearly evidenced by the fact that the application notes now provide that* **"a Defendant who does not have a proprietary interest in the criminal activity and who is simply paid to perform tasks should be considered for an adjustment under this guideline."** *Please see* USSG s.2B1.2, App. N. 3.

In response to the Commission's concerns, the Sentencing Commission's amendment to the guidelines was specifically designed to address the flawed approach taken by *Rodriguez De Varon* and other courts. As noted in the legislative history of the mitigating role amendment:

> Next, the amendment addresses cases in which the Defendant was 'integral' or 'indispensable' to the commission of the offense. Public comment suggested, and a review of case law confirmed, that in some cases a Defendant may be denied a mitigating role adjustment solely because he or she was "integral" or "indispensable" to the commission of the offense. [Citations Omitted] ***[T]he Amendment revises the commentary to emphasize that the "the fact that a Defendant performs an essential or indispensable role in the criminal activity is not determinative" and that such a Defendant may receive a mitigating role adjustment, if he or she is otherwise eligible.***

USSG Appendix C, Amend. 794 (emphasis added)

As such, it is clear from the legislative history of the clarifying amendment to USSG s.2B1.2 (Mitigating Role) that *Rodriguez De Varon* and similar cases have been abrogated by the Sentencing Commission and, by Congress who passed the amendment. While the

legislative history to the amendment does not specifically reference *Rodriguez De Varon*, it does specifically reference *United States v. Skinner*, 690 F.3d 772, 783-784 (6th Cir. 2012); *United States v. Panaigua-Verdugo*, 537 F.3d 722, 725 (7th Cir. 2008); *United States v. Deans*, 590 F.3d 907, 910 (8th Cir. 2010); and *United States v. Carter,* 971 F.2d 597, 600 (10th Cir. 1992) - all of which rely upon the same flawed reasoning in *Rodriguez De Varon* that if a Defendant plays an critical, integral, essential, important, or indispensable role in the criminal activity, they are ineligible for a mitigating role reduction. *Please see* USSG Appendix C, Amend. 794. Clearly, this approach is no longer applicable and thus this Court should not look to the *Rodriguez De Varon* opinion but instead look to the amended guideline and the factors enumerated by the Sentencing Commission for this Court's consideration.

*Of further significance to the present case*, in listing the factors this Court should consider when determining the applicability of a mitigating role reduction, *the Commission did not reference the amount of drugs involved in the criminal activity*. In contrast, in *Rodriguez De Varon*, the Eleventh Circuit relied heavily on the amount of drugs found in the courier's possession. As noted by the Court in *Rodriguez De Varon*, "because the amount of drugs in a courier's possession –whether very large or very small – may be the best indicator of the magnitude of the courier's participation in the criminal enterprise, we do not foreclose the possibility that the amount of the drugs may be dispositive in and of itself in the extreme case." *Id*. at 943. Numerous Courts in this District, following the guidance of *Rodriguez De Varon*, have previously denied a minor role reduction for Defendants similarly-situated as the Defendant, based on the large quantity of drugs found on the their vessel or in the water after

the drugs had been thrown overboard by the couriers.

In 1999, the Eleventh Circuit found support for the "quantity-of-drugs" factor by pointing to an example found within an Application Note in the 1999 version of the s.2B1.2 guideline. *Id.* However, subsequent to the issuance of the *Rodriguez De Varon* opinion, the illustrative example related to the quantity of drugs in the application note was deleted by the Sentencing Commission in the November 1, 2001, version of the guidelines. *Please see* Nov. 1, 2001 §2B1.2 guideline, App. Notes generally. ***The removal of the illustrative "quantity of the drugs" example clearly evidences the Commission's intent that the amount of drugs involved should not be a determinative factor.*** *In fact, this intent is further exemplified by the present version of the Guidelines, which lists five factors for a court's consideration, none of which focuses on the amount of drugs transported and certainly none of which suggests that in an extreme case the amount of drug could be determinative.*

***In conclusion, the Defendant should receive a 2-level minor role reduction and a corresponding 3-level USSG s.2D1.1(a)(5)(iii) adjustment in his base offense level.***

## V. MOTION FOR SAFETY VALVE (a 2 level reduction and waiver of the min/man)

On December 21, 2018, the First Step Act (Act) was passed. Section 402 of the Act amended 18 USC s.3553(f) by expressly extending safety valve eligibility to cases brought under the Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.C. ss.70503, 70506 (boat cases under title 46).

Much of the following is based upon citations and discussions in the *2009 Handbook*,. A *Federal Sentencing Guidelines Handbook,* 2009-2010 Edition, Roger W. Haines, Jr, Frank O. Bowman, III, Jennifer C. Woll, Thomson Reuters/West Publishing. The

defendant has the burden of proof in Safety Valve cases by a preponderance of the evidence. *U.S. v. Matos*, 328 F.3d 34 (1st Cir. 2003); *U.S. v. Ajugwo*, 82 F.3d 925 (9th Cir. 1996).

The Safety Valve is actually Mandatory if the Sentencing Court finds the defendant meets all five criteria. *U.S. v. Leonard*, 157 F.3d 343 (5th Cir. 1998) (holding that the safety valve reduction is mandatory, not discretionary, but finding non plain error); *U.S. v. Myers*, 104 F.3d 76 (5th Cir. 1997)), and "survives *Booker's* holding the guidelines advisory" (*U.S. v. Cardenas-Juarez*, 469 F.3d 1331 (9th Cir. 2006); *U.S. v. Booker*, 543 U.S. 220 (2005)). Hence, the District Court must apply the "Safety Valve" Exception if the statutory requirements are met. *U.S. v. Quirante*, 486 F.3d 1273 (11th Cir. 2007) (holding that safety valve protection is not discretionary). Of course though, post *Booker*, because the guidelines are advisory, a court may "vary" upward to and even past the mandatory minimum after consideration of the factors in 18 USC s.3553(a). *U.S. v. Quirante*, 486 F.3d 1273 (11th Cir. 2007).

A District Court's denial to grant "Safety Valve" protection is reviewable on appeal since it does not have discretion to refuse its application if qualified. *U.S. v. Cruz*, 106 F.3d 1553 (11th Cir. 1997). Therefore, a District Court ought to make sufficient findings in denying "Safety Valve" credit, permitting meaningful appellate review. *U.S. v. Reid*, 139 F.3d 1367 (11th Cir. 1998) (the District Court said only that it did "not feel the safety valve applies in this case"); *U.S. v. Smith* 174 F.3d 52 (2d Cir. 1999). However, a defendant waives appellate review of "Safety Valve" issues by waiving appeal (*U.S. v. Difeaux*, 163 F.3d 725 (2d Cir. 1998)), or by failing to raise the "Safety Valve" claim at sentencing (Appellant advocated for Safety Valve Application at sentencing). *U.S. v. Hoskins*, 173 F.3d

351 (6th Cir. 1999).  Additionally, a claim of error by a District Court to find "Safety Valve"

qualification, is wholly irrelevant where a lawful guidelines sentence (post *Booker*

particularly) is above the mandatory minimum or "without the two level adjustment

downward" or where the claimed "error" does not affect the defendant's substantial rights

(scenarios not present here instantly).  *U.S. v. Leonard,* 157 F.3d 343 (5th Cir. 1998) (holding

the District Court plainly erred in not granting defendant a reduction under s.2D1.1(b)(6) but

ruling the error did not affect his substantial rights because his 108 month sentence was

within the 97-121 month range he would have received with the reduction).

## VI. <u>Avoiding unwarranted sentence disparities: similar records & instant conduct</u>

**18 USC 3553(a)(6):**

*(a) Factors To Be Considered in Imposing a Sentence.— The court shall impose a sentence
sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph
(2) of this subsection. The court, in determining the particular sentence to be imposed, shall
consider—*

*(6) the need to avoid unwarranted sentence disparities among defendants with similar
records who have been found guilty of similar conduct; and*

**USSG s.5K2.0 s.20**

"After Booker [fn1], the courts must consider the factors in 18 U.S.C. s.3553(a) including

subsection (6)…"  *Federal Sentencing Guidelines Handbook, Text and Analysis, 2014-2015*

*Edition*, Roger W. Haines, Jr, Frank O. Bowman, III, and Jennifer C. Woll, Thomson

Reuters, ("*Handbook*"), s.5K2.0, Grounds for Departure, Generally, at p.1689.

"Section 3553(a)(6) requires the judge to 'avoid unwarranted sentence disparities among
defendants with similar records who have been found guilty of similar conduct.' 'Disparity
gets its content from the purposes of sentencing.  Unwarranted disparity is different treatment
of offenders who are similar in ways that are relevant to the purposes of sentencing, or
uniform treatment of offenders who differ in ways that are relevant to the purposes of
sentencing [fn69].'" *Defending a Federal Criminal Case*, 2010 Edition, Volume II, Federal

Defenders of San Diego, Inc, at 17-813 ("*Federal Defender*"), citing and quoting Fifteen Year Review at 113; Paul J. Hofer, *Immediate and Long-Term Effects of United States v. Booker*, 38 Ariz.ST.L.J. 425, 442 (2006).

"Defendants with similar records convicted of similar conduct vary widely in their culpability, risk of recidivism, dangerousness, and rehabilitation needs. Judges must now take account of these variations, and uniformity for its own sake is no longer the goal of the sentencing system. *See Kimbrough*, 128 S.Ct. at 574 ("some departures from uniformity were a necessary cost of the remedy we adopted"). Judges must now consider the need to avoid unwarranted similarities among the defendants who are not similarly situated, as well as unwarranted disparities among defendants who are similarly situated. *See Gall*, 128 S.Ct. at 600 (approving of the judge's 'consider[ation of] the need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated" (emphasis in original). And the judge must consider "any unwarranted disparity created by the [guideline] itself." *Kimbrough*, 128 S.Ct. at 574; *see also id.* at 575 (approving judge's consideration of the fact that the guideline 'itself created an unwarranted disparity within the meaning of s.3553(a)')." *Federal Defender* at 17-813, citing and quoting *Kimbrough v. U.S*, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed. 2d 481, 2007 U.S. LEXIS 13082 (2007); and *Gall v. U.S*, Citations: 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed. 2d 445, 2007 U.S. LEXIS 13083 (2007).

Of the total 14 Codefendants in the above-styled case, 2 have been sentenced so far:

**Nelson José Fermín Marcano** sentenced 2/3/20 would have received a 63 month recommended "bottom of the 63-78 months range for a TOL of 26 cr.hx.cat.I", after apparently the *Minor Role* (2 + 3 levels) reduction and the *Safety Valve* (2 level) reduction, except that he *earned* a Government 2 level USSG *s.5k1.1 motion* which was granted, and the Sentencing Court apparently took into account his *background*, history, and characteristics, reducing *one further level*, reducing his ultimate sentence recommendation to a 46 month "bottom of the 46-57 months range for a TOL of 23 cr.hx.cat.I";

**Rogelio Ramón Narváez** sentenced 2/6/20 received a 63 months recommended "bottom of the 63-78 months range for a TOL of 26 cr.hx.cat.I", apparently after the *Minor Role* (2 + 3 levels) reduction and the *Safety Valve* (2 level) reduction.

**Similarly Situated**

**Both of these Codefendants** were mere, economically poor, laborers used by the high ups to sail this fishing boat for the illegal drug smuggling venture here (**Nelson José Fermín Marcano** Sentencing Memorandum Doc.233 (his family lacked food many times and at 14 years of age he began to work construction to help his single mom economically) **Rogelio Ramón Narváez** Sentencing Memorandum Doc.254 (prior to the boat trip in this case, he made about $60 per fishing trip for being a fisherman, Doc.254 p.2)), and both, like the Defendant, had no prior records.

**OTHER SENTENCING FACTORS SUPPORTING DOWNWARD VARIANCE**

**VII. <u>he has an 8 year old daughter & 2 step children, whom he adores, is a dedicated husband to his homemaker wife, the kids' mother; whom he is the main means of support to</u>**

The harsh effect incarceration can have on innocent family members is a factor courts can consider under s.3553(a), *<u>Defending a Federal Criminal Case, 2010 Edition,</u>* Federal Defenders of San Diego, Inc. ("*Federal Defender*") at p.17-864, section 17.05.18.01, citing to various cases, including *U.S. v. Antonakopoulos*, 399 F.3d 68 (1st Cir. 2005); *U.S. v. Taylor*, 280 Fed. App'x 397 (5th Cir. 2008); *U.S. v. Dominguez*, 296 F.3d 192 (3d Cir. 2002); *U.S. v. Prisel*, 316 Fed. App'x 377 (6th Cir. 2008); *U.S. v. Owens*, 145 F.3d 923 (7th Cir. 1998); *U.S. v. Lehmann*, 513 F.3d 805 (8th Cir. Jan. 17, 2008); *U.S. v. Menyweather*, 431 F.3d 692 (9th Cir. 2005); *U.S. v. Leon*, 341 F.3d 928 (9th Cir. 2003); *U.S. v. Aguirre*, 214 F.3d 1122 (9th Cir. 2000); *U.S. v. Garcia-Salas*, 260 Fed. App'x 27 (10th Cir. 2007); *U.S. v. Gauvin*, 173 F.3d 798 (10th Cir. 1999); *U.S. v. Davis*, 2008 WL 2329290 (S.D.N.Y. June 5, 2008); *U.S. v. Crawford*, 2007 WL 2436746 (E.D. Wis. Aug. 22, 2007); *U.S. v. Boeka*, 2006 WL 3789499 (D. Neb. Dec. 20, 2006); *U.S. v. Bortnick*, 2006 WL 680544 (E.D. Pa. March

15, 2006);  *U.S. v. Bailey*, 369 F. Supp. 2d 1090 (D. Neb. 2005);  *U.S. v. Manasrah*, 347 F. Supp. 2d 634 (E.D. Wis. 2004); *U.S. v. Mateo*, 299 F. Supp. 2d 201 (S.D.N.Y. 2004); *U.S. v. Colp*, 249 F.Supp. 2d 740 (E.D. Va. 2003); *U.S. v. Lopez*, 28 F. Supp. 2d 953 (E.D. Pa. 1998);

**VIII. <u>after a significant sentence term in prison, at some point, studies say, longer sentences lose any more efficacy at deterence</u>**

**To afford adequate deterrence to criminal conduct.**

The Defendant will be deported upon completing the incarcerative portion of his sentence, given he was brought to the U.S. solely for this prosecution. Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." <u>Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Just. 1, 28 (2006)</u> "Three National Academy of Science panels… reached that conclusion, as has every major survey of evidence." Id.; *Please see also* <u>Zvi D. Gabbay, Exploring the Limits of the Rerstrative Justice Paradigm: Restorative Justice and Sentence Severity: An Analysis of Recent Research (1999), summary available at</u> <u>http://members.lycos.co.uk/lawnet/SENTENCE.PDF</u>. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European Countries. Id. at 1. It examined the effects of changes to both the certainty and severity of punishment. Id. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates…were not sufficient to achieve statistical significance." Id. at 2. The report concluded

that the "studies reviewed do not provide a basis for inferring that increasing the severity of

sentences is capable of enhancing deterrent effects." Id. at 1.

**Wherefore, the Defendant, Daniel Vásquez Vásquez,** by and through his undersigned

counsel, prays this Honorable Court enter its order sustaining his objections, granting his

motions, and imposing a reasonable sentence.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished to the U.S.
Attorney's Office, and all electronically connected parties, Via Electronic Filing, on Sunday
February 16, 2020.

## CERTIFICATE OF TYPE AND FONT COMPLIANCE WITH LOCAL RULES

This memorandum is typed with 12 point Times New Roman font; its footnote is 10 point
font; it is 23 (no more than 25) pages long; has 1.25 inch top, left, and bottom and 1.00 inch
right margins. **Local Rules 1.05 Forms of Pleadings; General Requirements; 3.01
Motions, Briefs, Hearings**

*Respectfully* submitted,

*/s/ Jorge León Chalela*

**JORGE LEÓN CHALELA, Esq.**
**Jorge León Chalela, P.A.**
P.O. Box 173407
Tampa, Florida 33672
Office: (813) 221-5600
Personal Cell: (727) 415-4286
Fax: (813) 350-7801
chalelalaw@yahoo.com
FBN: 73245
(CJA) Attorney for Defendant, Daniel Vásquez